STATE of North Dakota, Plaintiff
and Appellee,

v.

Gerald LeRoy SWENNINGSON,
Defendant and Appellant.

Cr. No. 709.

Supreme Court of North Dakota.

Oct. 6, 1980.

Rolf Sletten, Asst. State's Atty., Bismarck, for plaintiff and appellee.

Ralph Vinje, Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

The defendant, Gerald Swenningson, appeals from a jury conviction of burglary, rendered on December 18, 1979, in Burleigh County District Court. Gerald specifically alleges that the trial court erred by failing to suppress evidence which was obtained in a third party consent search. We affirm.

In January of 1979 a Bismarck home was burglarized. Jewelry and silverware, among other items, were reported missing. During the course of the investigation, a juvenile was questioned in connection with the burglary. He informed police that he and Gerald had committed the burglary. He also indicated he believed some of the stolen property was still in Gerald's possession. After obtaining this information, the

police went to Gerald's place of residence, which was his father's home. At the home, Gerald's sister informed the police that she could not give permission to search the house but suggested they contact her father, Richard.

Gerald's father, Richard, gave the police written permission to search his home. A search of the home was conducted which revealed silverware and jewelry which were identified as those which had been stolen. These items were found in Gerald's bedroom in his father's house.

Prior to trial, Gerald moved to suppress the evidence and subsequent statements which were made by him. The basis of the motion was that the consent by the father to a search of the son's bedroom was inadequate to waive the son's Fourth Amendment rights. The motion was heard on March 27, 1979, by a county court judge. The testimony at the hearing established that Gerald was emancipated and 19 years old. Gerald had lived away from home and had asked his father to be allowed to return home. The father told Gerald to come home anytime. Gerald returned home for three days and then left again. He subsequently returned and began residing in his father's home in January of 1979. Gerald and his father informally agreed that Gerald should pay rent as soon as he was able. The understanding did not specify an amount to be paid as rent.

Gerald was arrested on March 27, prior to paying any rent. He subsequently paid rent for March, after he received his second check from the job which he had worked at for one month. Prior to this time he contends he did not have sufficient money to pay any rent.

Further testimony by Gerald revealed that his father could enter his bedroom uninvited anytime, but never had. Additionally, Gerald's sister entered Gerald's room at will, even when he was not present.

The specific issue on appeal is: Did the trial court err in denying defendant's motion for suppression of the evidence obtained in a search of his bedroom consented to by his father.

The Fourth Amendment of the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This amendment prohibits only unreasonable searches. It has been determined that a reasonable search requires a search warrant prior to the search. This requirement is subject to certain exceptions.

In *State v. Matthews*, 216 N.W.2d 90, 99 (N.D.1974), this court set out three basic premises in determining the constitutionality of a search as follows:

"One, as stated in *State v. Gagnon*, 207 N.W.2d 260, 263 (N.D.1973), 'All searches made without a valid search warrant are unreasonable unless they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).' To the same effect, *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

"Two, where a violation of the Fourth Amendment provision as to search and seizure is asserted, the burden of proof on a motion to suppress is on the State. *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

"Three, ever since *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), evidence obtained by search and seizure violative of the Fourth Amendment is, by virtue of the Due Process Clause of the Fourteenth Amendment, inadmissible in State courts. *State v. Manning*, 134 N.W. 2d 91 (N.D.1965)."

■ As we stated in *Matthews*, the burden of proof is upon the State to show that the evidence was not obtained in violation

of the defendant's Fourth Amendment rights. While this burden rests upon the State, it is not necessary for the State to negate every conceivable action which could possibly have infringed upon Gerald's rights. Rather, the person who alleges that his rights have been violated must present some specific evidence demonstrating taint. *Alderman v. United States*, 399 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 76 (1969).

■ In this case the allegation was that the search, pursuant to Gerald's father's consent, was not a valid consent search. One of the exceptions to the warrant requirement is when an appropriate person consents to such a search. This does not require that the person against whom the evidence is used must consent to the search. It is sufficient and reasonable if consent is given by a third party who possesses common authority over, or other sufficient relationship to, the premises. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). This third-party consent is valid because when two or more people have common authority over certain premises, it is reasonable to assume that the parties realize that one of them may consent to a search of the area over which all have common authority and none have exclusive authority.

In *United States v. Matlock, supra*, 415 U.S. at 171, 94 S.Ct. at 993, the United States Supreme Court stated the requirement to uphold a third–party consent as follows:

"These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.[7] . . .

"[7] Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third–party consent does not rest upon the law of property, with its attendant historical and legal refinements, see

*Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co–inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

In *Matlock* the consent was given by a woman with whom the defendant shared the bedroom which was searched. The third-party consent was upheld on the ground that she possessed common authority over the premises. The court, in footnote 7, stated that this was because the defendant had "assumed the risk" that his co-occupant would consent to a search. Therefore it was not unreasonable. Another explanation for permitting a search under such circumstances might be that, when there are co occupants, each has a right to allow a search of the premises over which he shares authority.

Some cases have emphasized the expectation of privacy distinction. *People v. Nunn*, 55 Ill.2d 344, 304 N.E.2d 81 (1973), *cert. denied*, 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 108 (1974); *United States v. Block*, 590 F.2d 535 (4th Cir.1978). The expectation-of-privacy standard was rejected in *People v. Stacey*, 58 Ill.2d 83, 317 N.E.2d 24 (1974), on the basis of the "common authority" test of *Matlock*. *People v. Stacey, supra*, 317 N.E.2d at 27. This indicates that the authority to allow a search lies within a third party's own right to allow a search of the area or property over which he has common authority. This view is supported by cases which allow a third party with common authority to consent to a search even when the defendant is present and objects. *United States v. Hendrix*, 595 F.2d 883 (D.C.Cir.1979); *United States v. Sumlin*, 567 F.2d 684 (6th Cir.1977).

■ The authority of a third party to consent extends only to those areas and objects over which that person has common

authority. Such authority does not extend to those areas or effects which are exclusively those of the subject of the search. *United States v. Block*, 590 F.2d 535 (4th Cir.1978); *In Re Scott K.*, 24 Cal.3d 263, 155 Cal.Rptr. 671, 595 P.2d 105 (1979). In both of the above cases it was held that a parent could consent to a search of the child's room since a parent had common authority but could not consent to a search of a footlocker or tool chest which was exclusively the child's. In *Block* the child was an adult and in *In Re Scott K.* the child was a minor.

■ From these cases it is apparent that a third party may not consent to a search of the premises or effects under another person's exclusive control. But a third party may consent, in his own right, to the search of an area or effects over which parties have common authority. As was stated in *Matlock*, this authority does not rest on any proprietary interest, rather solely upon common authority. *United States v. Matlock, supra*, 415 U.S. at 171, 94 S.Ct. at 993. This is shown by the lessor–lessee cases in which a lessor's consent is not sufficient to authorize a valid search of the lessee's premises, when it is a house, *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); an apartment, *People v. Booren*, 184 Colo. 233, 519 P.2d 939 (1974); or a room in a hotel, *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Therefore, when a party has exclusive possession of an area or personal property, an owner cannot consent to a search.

■ In reviewing the evidence in this case, we believe that the court's finding that Gerald did not have exclusive possession is reasonable. At one point, on cross · examination during the hearing on the motion to suppress evidence, Gerald's father testified as follows:

"Q. And it is your testimony that this room was for his exclusive use, not for anybody else's use?

"A. Yes."

On redirect, this was clarified as follows:

"Q. When you say the room was for his exclusive use, do you mean that it was the only one he slept in?

"A. Yes.

"Q. And that he was the only one who slept in there?

"A. Yes, that's right."

Gerald also testified as follows:

"Q. Was there any reason why your father couldn't go in and out of the room?

"A. He never did.

"Q. Was there any reason why your father couldn't?

"A. No.

"Q. And your sister did, in fact, go in and out of the room?

"A. Yes.

"Q. At any time?

"A. Once in a 'great while, just if she had something in there or something.

"Q. You had use of the rest of the house?

"A. Yes, I did.

"Q. When you called your father and told him that you wanted to come home, you said that you would pay him some rent or chip in the rent or however; is that how that came up?

"A. Yes.

"Q. And then, in fact, you didn't pay any rent until that one incident· is that right?

"A. I came back to Bismarck in January. I stayed for three days. Then I lived with somebody else. Then I moved back in. Then I stayed for about a month and a half or two months, and I paid him for a month's rent, and that was the month of March."

Additionally, Gerald testified that there was no lock for the door to his bedroom, and that he was not sure if he had left the door open or closed the day of the search.

All of these facts show that Gerald was not in exclusive possession of his room but that his father had common authority over the room. This common authority validat-

ed the consent by Gerald's father to the search of the house, including Gerald's room. The fact that Gerald "chipped in" some rent after his arrest is of little consequence as the facts show common authority over the room shared by father and son and not exclusive authority resting in the son. Under *Matlock*, the father had the requisite authority to consent to a search of that room. Therefore the search was properly conducted under the consent exception to the search warrant requirement. The search was not unreasonable and the defendant's Fourth Amendment rights were not violated. As we have determined that the evidence was not illegally seized and was properly admitted, the judgment is affirmed.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.