**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Werner KUNKEL, Defendant and Appellant.**

**Crim. No. 1215.**

Supreme Court of North Dakota.

May 28, 1987.

Lewis C. Jorgenson, State's Atty., Devils Lake, for plaintiff and appellee State of North Dakota.

Thomas L. Trenbeath, of Fleming, DuBois & Trenbeath, Cavalier, for defendant and appellant.

VANDE WALLE, Justice.

Werner Kunkel appealed from the jury verdict of the district court of Ramsey County which found him guilty of assault on a peace officer. Kunkel also appealed from the denial by the district court of his motion to suppress evidence of the assault and his motion for dismissal. We affirm.

On August 5, 1986, at approximately 5:40 a.m., Kunkel's mother, Marita, telephoned the Law Enforcement Center in Devils Lake. She requested that law-enforcement officers be sent to her home to remove Kunkel. When Officer Belgarde and Deputy Halvorson arrived at Marita's home, she admitted them and stated that Kunkel had struck her several times. The presence of dried blood on her face and clothes substantiated her statement. Marita told the officers that she wanted them to remove Kunkel from the home, but she refused to sign a complaint against him. She apparently did not want him arrested, but only removed from her home.

The officers asked Marita where Kunkel was and she told them he was downstairs in his bedroom. The officers proceeded downstairs and knocked on the door to Kunkel's bedroom. There was no response so the officers opened the door and entered the bedroom. They saw Kunkel lying in

bed and informed him that he had to leave the home. Kunkel told the officers, with quite explicit language, to leave the bedroom.[1] The officers told him that they were not arresting him, but that he had to leave the home and that they would take him wherever he wanted to go. Kunkel then got out of bed and began to dress. He asked the officers if he could drive in his own car but the officers refused because they believed that he was intoxicated.[2]

Following this exchange between Kunkel and the officers, Kunkel attacked the officers, inflicting scratches which required medical attention to Deputy Halvorson's face. The officers retreated to the upstairs portion of the home and telephoned Kunkel's parole officer, who came to the scene and ordered that Kunkel be taken into custody for detoxification. Kunkel was removed without further incident and later was charged with violating Section 12.1-17-01, N.D.C.C., simple assault on a peace officer.

At trial Kunkel attempted to have the officers' testimony regarding his attack suppressed. The trial court ruled that Marita had common authority over the bedroom in which Kunkel was staying. The trial court also found that the officers had probable cause to arrest Kunkel pursuant to Section 29-06-15, N.D.C.C., and that exigent circumstances existed which would allow the officers to enter Kunkel's bedroom. The trial court ruled that the officers' testimony was therefore admissible. The jury returned a verdict of guilty and Kunkel appealed.

On appeal Kunkel raises the following issues:

1. Whether Marita's consent was valid; and

2. Whether exigent circumstances were present.

Kunkel contends that both issues should be answered in the negative, and thus he claims that the trial court committed reversible error by admitting the officers' testimony. Kunkel argues that the officers' actions, in entering his room and attempting to remove him from the home, violated his constitutional rights and that evidence of his attack on the officers should therefore be suppressed.

Before considering these issues on their merits, we observe that procedurally Kunkel's attempt to suppress the officers' testimony may be questionable. He claims that the officers were not entitled to enter his bedroom, and therefore he had the right to demand that they leave. When they failed to do so, he asserts that he had the right to attack them to force them to leave.[3] Kunkel cites Section 12.1-05-06, N.D.C.C., for the proposition that an occupant may use force to remove persons who are unlawfully on the premises. Section 12.1-05-06 provides:

"Force is justified if it is used to prevent or terminate an unlawful entry or

1. Kunkel claims that even if Marita could have initially consented to the officers' entry, once he told them to leave Marita's consent no longer was valid. This simply is not the law of our State. Marita's common authority over Kunkel's bedroom gave her the right to allow the officers to enter, regardless of the fact that Kunkel was present and objected to the officers' presence. State v. Swenningson, 297 N.W.2d 405 (N.D.1980).

2. It is undisputed throughout trial and on appeal that Kunkel, as well as the other family members who were present, were intoxicated. Testimony reveals that the family was celebrating Kunkel's recent marriage. A dispute between Kunkel and Marita resulted in slaps to the face and threats of other physical violence. The officers were summoned because of this violence.

3. Regardless of Kunkel's belief that the police were wrongfully in his room, his attack was not the proper way to challenge their conduct. In our system law and order may sometimes interfere with an individual's rights. We do not intend to legitimize police misconduct, but only to emphasize that a procedure is available to rectify any injustice done by such misconduct. If Kunkel believed the police were acting improperly, he could have brought an action against the officers for an infringement of his civil rights. Additionally, had the officers sought to introduce any physical evidence which they acquired as a result of their entry, Kunkel could have attempted to have it suppressed. In essence, the proper forum for the resolution of the propriety of the officers' action was in a courtroom by a judge, not via an attack in a bedroom by an intoxicated citizen.

other trespass in or upon premises, or to prevent an unlawful carrying away or damaging of property, if the person using such force first requests the person against whom such force is to be used to desist from his interference with the premises or property, except that a request is not necessary if it would be useless or dangerous to make the request or substantial damage would be done to the property sought to be protected before the request could effectively be made."

This section permits a certain amount of force when acting in defense of premises. But Kunkel misinterprets the proper method of using the justification provided in this section. He seeks to use it as a reason for suppression of evidence. However, Section 12.1–05–01(1), N.D.C.C., states: "Except as otherwise provided, justification or excuse under this chapter is a *defense*." [Emphasis added.] Kunkel could have claimed that he was justified in attacking the officers as a defense before the jury, rather than by a motion to suppress evidence of the attack. In fact, Kunkel made such an argument to the jury, and in view of the guilty verdict, it appears that the jury did not believe Kunkel was justified in his attack.

Kunkel maintains that the officers' entry into his bedroom was illegal because his mother's consent was not valid. In the usual case, consent is given by a third party to search an area or seize certain items. In the present case Marita admitted the officers into her home and requested that they remove Kunkel because he had struck her. When they asked where he was, she directed them to Kunkel's bedroom in the basement. Although she may not have consented to a search of Kunkel's bedroom, she clearly consented to the officers' entry into that bedroom. Thus, if her consent was valid, the officers acted properly in entering Kunkel's bedroom.

We stated in *State v. Swenningson*, 297 N.W.2d 405, 407 (N.D.1980), in which consent was given by the defendant's father to search the defendant's bedroom, that "It is sufficient and reasonable if consent is given by a third party who possesses common

authority over, or other sufficient relationship to, the premises."

Common authority is based upon mutual use of the premises by persons who generally have control over or joint access to the premises for most purposes. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In examining whether a third party has sufficient common authority over the premises, we must determine whether it is reasonable to recognize:

1. That any of the coinhabitants, including the third party, has the right to permit the entry in her own right; and

2. That the defendant has assumed the risk that one of the coinhabitants might permit others, including the police, to enter the common area.

*Matlock, supra.*

Thus the critical inquiry is whether Marita had sufficient authority over or relationship to Kunkel's bedroom that she could consent to the officers' entry. Marita owned the home in which Kunkel was living. Although Kunkel claims that he agreed to pay rent when he could afford it, and to provide services when he could not, as of the time of his attack on the officers he had not paid any rent. He had provided services such as cleaning and baby-sitting, but that is not unusual when a son is living in his mother's home. He also assisted in some excavation to repair a sewer line. The evidence was insufficient to establish a landlord-tenant relationship, and, in essence, the arrangement was merely that of a son residing with his mother. Kunkel had been staying in his basement bedroom for approximately two months, but he had stayed with Marita on prior occasions whenever he was living in town.

Kunkel makes much of the fact that the basement is separated from the upstairs of the home by a door which is lockable from the upstairs but not unlockable from the basement. This only indicates that Marita could exclude Kunkel from the upstairs if she chose to do so. Kunkel could not exclude her from the basement and does not claim he could. However, he does assert

that he had "exclusive authority" over the bedroom in which he stayed, and therefore Marita could not have consented to the officers' entry.

Marita's testimony at the suppression hearing indicates that she retained authority over Kunkel's bedroom, despite his claim that the bedroom was his. During examination, Marita testified:

"Q. But, in fact, the house is open to everybody, is it not?

"A. Yes.

.    .    .    .    .

"Q. You're not saying, Mrs. Kunkel—or Mrs. Lien, that you and your husband don't have full run of that house, don't you?

"A. Yes.

"Q. You have the full run of that house, don't you?

"A. Yeah.

"Q. And it's your home whether it's the basement door, the upstairs door or any other door, right?

"A. Yes."

In response to Kunkel's motion to suppress, the trial court stated:

"Furthermore, as to the matter of consent, the Court finds that Mrs. Lien, the defendant's mother, did possess common authority over and had a sufficient relationship with the defendant and the premises to allow consent for the officers to go to the basement to the defendant's bedroom to make contact with him to investigate, to detain, and to remove him and that such bedroom was not within the exclusive use of this defendant as found by the Courts in *U.S. v. Matlock*, 415 U.S. 164 [94 S.Ct. 988; 39 L.Ed.2d 242] (1974), and *State v. Swenningson*, 297 N.W.2d 405 ([N.D.]1980), ..."

In view of the limited testimony relating to authority over the bedroom in which Kunkel was staying, the trial court acted properly in relying on *Matlock* and *Swenningson* to find that Marita had common authority over the bedroom. Because she had common authority over the bedroom, she could properly consent to the officers' entry. As a result of that consent, the officers legally entered Kunkel's bedroom. Thus the officers' testimony regarding Kunkel's attack was admissible. Because of our holding that Marita validly consented to the officers' entry into Kunkel's bedroom, we need not address the issue of whether the officers had probable cause to arrest Kunkel, coupled with exigent circumstances, prior to their entry.

The verdict and the orders denying the motion to suppress and the motion to dismiss are affirmed.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice (special concurrence).

I concur in the result reached by the majority but write separately to distinguish this case from *State v. Saavedra*, 396 N.W.2d 304 (N.D.1986), and to note my exception to the majority's suggestion that *procedurally* the motion to suppress "may be questionable" [majority opinion page 682]. I believe there is nothing inherently objectionable about proceeding by way of a motion to suppress evidence of criminal conduct, other than the fact that the motion is unlikely to be granted because of *State v. Saavedra.*

In *State v. Saavedra, supra,* we followed the precedent established by *State v. Indvik*, 382 N.W.2d 623 (N.D.1986), and held that the trial court did not err in refusing to suppress evidence of Saavedra's disorderly conduct because Saavedra's independent and intervening conduct broke the chain of causation and dissipated the taint of prior illegality. We reasoned that the deterrent purpose of the exclusionary rule is not served by extending the rule to suppress evidence of independent crimes occurring in response to an unlawful search or seizure, where there is no flagrant police misconduct. *State v. Saavedra, supra* at 305. The precedent established in *State v. Saavedra, supra,* is in accord with a line of cases in which courts have refused to extend the exclusionary rule to suppress evidence of independent crimes taking place as a reaction to an unlawful arrest or search. *See State v. Boilard*, 488 A.2d 1380, 1387 (Me.1985);

*State v. Kittleson,* 305 N.W.2d 787, 789 (Minn.1981); *Commonwealth v. Saia,* 372 Mass. 53, 57–58, 360 N.E.2d 329, 332 (1977); *State v. Burger,* 55 Or.App. 712, 716, 639 P.2d 706, 708 (1982). *See also* 4 W. La-Fave, Search and Seizure, § 11.4(j) (2 ed. 1987).

In this case, I believe the defendant attempts to raise two separate issues, although not delineated as such or clearly set forth in the briefs on appeal. Kunkel's primary argument is the same as the one made by Saavedra, that his fourth amendment rights were violated and therefore any evidence of his subsequent conduct must be suppressed. The second argument is made in Kunkel's reply brief where he relies upon § 12.1–05–06, NDCC, in an attempt to justify his conduct. While I agree with the majority that the justification argument is really a defense, I view it as an issue separate and apart from Kunkel's fourth amendment argument. Because the justification argument was made to and rejected by the jury, it needs no further discussion.

Kunkel's fourth amendment argument, in my view, was appropriately raised by a motion to suppress, as were Indvik's and Saavedra's. However, in *State v. Saavedra, supra,* the State conceded the illegality of the search and seizure and our analysis proceeded from that premise. In this case, there is no fourth amendment violation because there was valid consent to the officers' entry. The majority correctly disposed of the case based upon the threshold issue of consent. Because the officers' entry was legal, there is no *"Saavedra"* issue. If the entry were unreasonable, *i.e.,* unconsented to, *State v. Saavedra* would compel the same result, affirmance of the trial court's denial of the motion to suppress.