STATE of North Dakota, Plaintiff and Appellee,

v.

Gary D. THORDARSON, Defendant and Appellant.

Cr. No. 880303.

Supreme Court of North Dakota.

May 17, 1989.

Laurie A. Cook, State's Atty., Cavalier, for plaintiff and appellee. No appearance. Submitted on brief.

Fleming, DuBois & Trenbeath, Cavalier, for defendant and appellant. No appearance. Submitted on brief by Thomas L. Trenbeath.

MESCHKE, Justice.

Gary D. Thordarson appealed from a conviction of driving while his license was suspended. He argued that the stop was un-reasonable and that evidence of his suspension resulted from an unlawful arrest. We uphold his conviction.

During night patrol on June 2, 1988, at 1:00 A.M., a Cavalier policeman received a message from the radio dispatcher of the Pembina County Law Enforcement Center. The message reported a telephone call from an unidentified person that "down by Cenex there had been some motorcycles going back and forth and tearing around there." The officer drove to the Cenex station quickly, within fifteen to thirty seconds. He saw two motorcycles several blocks away traveling towards him. The officer testified the motorcycles were speeding, going thirty-five miles per hour in a twenty-five mile per hour zone.

As the motorcycles passed him, the officer turned around in the Cenex driveway. He followed and stopped Thordarson about a block and a half away. The officer smelled alcohol, heard Thordarson's slurred speech, and saw Thordarson's "glassy" eyes. After "fair" performance by Thordarson in field tests of sobriety, walking "heel-to-toe" and reciting the alphabet, the officer arrested Thordarson for driving under the influence of alcohol.

During the stop (whether before or after the arrest was disputed), the officer asked Thordarson for his driver's license. Thordarson replied that he didn't have one. At the police station, the officer teletyped the State License Division for information on Thordarson's license. The following day, after learning that Thordarson's license was suspended, the officer also charged him with driving under suspension.

Thordarson moved to suppress all evidence, arguing that there was no reasonable basis for the stop and no probable cause for his arrest. The trial court determined that the officer had "a reasonable basis for suspicion of unlawful conduct," but had "insufficient probable cause to arrest" Thordarson. The trial court suppressed "evidence acquired after the arrest and as a result of the arrest," but refused to suppress "evidence of identification and [of] the driver's failure to have a license in possession." The trial court also ruled that

"evidence as to [Thordarson's] driving priviledges [sic]," acquired after the arrest, was "in the realm of inevitable discovery." The charge of driving under the influence was dismissed. Thordarson pled guilty to the charge of driving under suspension, reserving the right to appeal under NDRCrimP 11(a)(2).

The State did not appeal the suppression order. Thordarson appealed his conviction, arguing that all evidence should have been suppressed because the stop was unreasonable. Alternatively, Thordarson argued that the trial court erred in concluding that the officer's "discovery of evidence pertaining to Mr. Thordarson's driving privileges was inevitable." Thordarson argued that the discovery of the fact of his suspension was "a direct result" of his unlawful arrest, since it followed the arrest, and, therefore, that fact should have been also suppressed as the "fruit-of-the-poisonous tree."

The State responded that, since the officer "personally observed" a speeding violation, in addition to acting on the anonymous telephone call, the stop was reasonable. The State also argued that evidence of the suspension "was [not] the result of an exploitation of an illegal seizure," but "was obtained from a source wholly independent from the illegality" of the arrest. The State urged that evidence of the suspension "should not be suppressed based on the independent source doctrine and the inevitable discovery."

■ Stops of motor vehicles and arrests for traffic offenses are safeguarded by the constitutional "right of the people to be secure in their persons ... against unreasonable searches and seizures...." United States Constitution, Fourth Amendment; North Dakota Constitution, Article I, Section 8. For an investigative stop of a vehicle, an officer must have an articulable and reasonable suspicion that a motorist is violating the law. *State v. Lykken*, 406 N.W.2d 664 (N.D.1987). In assessing the reasonableness of a stop, courts should take into account the reasoning of a trained and experienced officer which may elude a layperson. *State v. VandeHoven*, 388

N.W.2d 857 (N.D.1986). *See also United States v. Sokolow*, — U.S. —, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). On appeal, we recognize the importance of the trial court's opportunity to assess the credibility of witnesses by according great deference to a decision to suppress. *State v. Placek*, 386 N.W.2d 36 (N.D.1986).

■ Although this officer started with a tip from an anonymous caller, the officer used his own senses to observe Thordarson violating the law by speeding. We conclude that the trial court correctly determined that the officer's suspicion of unlawful conduct was both articulable and reasonable. Therefore, the stop was lawful and suppression of evidence was not necessary for that reason.

Thordarson made another argument. He associated the discovery of his license suspension with his arrest, which the trial court held was unlawful for lack of probable cause. Because the State has not disputed the illegality of the arrest, our analysis assumes unlawful conduct. We must decide whether the discovery of Thordarson's suspension stemmed from his arrest as he contends, from an independent source as the State contends, or from an inevitable discovery as the trial court concluded. Since the trial court did not connect the discovery to Thordarson's arrest, we resolve any ambiguities in the officer's testimony in favor of affirming the trial court. *State v. Placek, supra.*

The exclusionary rule enforces the constitutional right to be free of unreasonable searches and seizures by prohibiting use of evidence from unlawful conduct of officials. The rule is rooted in over a century of constitutional experience. *See Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); and *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Derivative evidence, as well as direct evidence, can be "fruit-of-the-poisonous tree." *Nardone, supra.*

That century of experience also developed an exception to the exclusionary rule, which allows evidence discovered by means

and sources independent of any constitutional violation. *See Silverthorne, supra; Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); and *State v. Saavedra*, 396 N.W.2d 304 (N.D. 1986). When evidence is obtained by means "wholly independent" of any constitutional violation, its exclusion would have little or no effect on an officer's incentive for unlawful conduct. Thus, this exception seeks to put police in no worse position than if no police misconduct had occurred. *Murray v. United States*, —— U.S. ——, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988).

■ An "inevitable discovery" exception grew out of the "independent source" exception.

"The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." (Emphasis in original). *Murray, supra,* 108 S.Ct. at 2534.

*See also State v. Phelps,* 297 N.W.2d 769 (N.D.1980) and *State v. Handtmann,* 437 N.W.2d 830 (N.D.1989). Thus, evidence discovered or discoverable wholly apart from unlawful official conduct is admissible in a criminal prosecution.

■ As explained in *Saavedra, supra,* assuming the primary illegality, we must assess whether the critical evidence was gathered by exploiting the illegality or, instead, by means sufficiently distinguishable to be free of the taint of illegality.

"Factors that have a bearing on this issue include the temporal proximity of the illegality and the fruit of that illegality, the presence of intervening circumstances, and the purpose and flagrancy of the police misconduct. (Citation omitted). The flagrancy of the police misconduct is particularly important because the purpose of the exclusionary rule is to deter police misconduct." *State v. Saavedra,* 396 N.W.2d at 305.

All surrounding circumstances can be useful in identifying the source of the disputed evidence.

Since the stop of Thordarson was proper, his identification was proper. It is commonplace for a traffic officer to identify the license status of a stopped driver. Although this verification was completed after an unlawful arrest, it was not dependent upon Thordarson's state of arrest. The information about the suspension was obtained after a lawful identification and from a lawful place. The erroneous police conduct was not flagrant. We agree that the source of the evidence was sufficiently independent of the unlawful arrest to make suppression unnecessary.

We affirm Thordarson's conviction.

ERICKSTAD, C.J., and LEVINE, GIERKE and VANDE WALLE, JJ., concur.