**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Leonard J. RITTER, Defendant and Appellee.**

**Cr. No. 900385.**

Supreme Court of North Dakota.

June 25, 1991.

Constance L. Cleveland (argued), Asst. States Atty., Fargo, for plaintiff and appellant.

Benjamin E. Thomas (argued), Fargo, for defendant and appellee.

MESCHKE, Justice.

The State appeals from dismissal of a misdemeanor charge of preventing arrest against Leonard J. Ritter. The trial court ruled that Ritter had been wrongfully de-

tained, thus excusing his forceful resistance to the arrest. We reverse and remand for trial, including the statutory defense that the arresting officer was not acting lawfully.

Three Fargo police officers were dispatched to a local tavern to look into a report of a fight. Before entering the tavern, officer Lies overheard a man say to a woman, "But the son of a bitch hit you." Lies asked the woman if she had been involved in the fight. When she replied that she had been and that she was leaving, Lies asked her to wait.

Inside the tavern, the bartender told the officers that the fight participants had left. The officers returned outside where they heard the same woman say to Ritter, "You're a fucking asshole." Officer Olson stopped to interview the woman. Separately, officer Lies began questioning Ritter, who denied knowledge of the fight and refused to identify himself unless arrested.

While talking to the woman, Olson signalled to officers Lies and Sanderson to detain and identify Ritter as a possible suspect. After Olson's signal, Lies tried to question Ritter again, but Ritter again refused to identify himself. Then, officers Lies and Sanderson each took one of Ritter's arms and physically moved him, over his loud protests, some distance to Lies's squad car. There, the two officers cornered Ritter in an area between the squad car and a building, and persisted in questioning him. Ritter continued to refuse to respond and repeatedly asked to leave.

Ritter became profane and belligerent, verbally threatening the officers and clenching his fists. Fearing escalation, the officers sought assistance from Olson who left off interviewing the woman. While the three officers surrounded Ritter closely, Olson too requested Ritter's identification and Ritter still refused. At this point, Ritter pushed Olson. The officers then told Ritter that he was under arrest for disorderly conduct. When the officers sought to handcuff him, Ritter fought with the officers, was subdued by force, and was taken to a hospital. Later, Ritter was charged with violating NDCC 12.1–17–01 for assault of the woman [1] and with violating NDCC 12.1–08–02 for preventing his arrest.[2]

Ritter moved to dismiss the preventing arrest charge. Based upon the deposition testimony of officer Lies as the agreed record for the motion, the trial court ruled that Ritter was "detained wrongfully for the purposes of ... identification," and that the investigative stop of Ritter exceeded a reasonable scope. The trial court expressed concern that the combined trial of the charge of preventing arrest with the distinct charge of assault "is only going to prejudice" Ritter. Just before the jury tri-

1. NDCC 12.1–17–01 defines simple assault:
    1. A person is guilty of an offense if he:
      a. Willfully causes bodily injury to another human being; or
      b. Negligently causes bodily injury to another human being by means of a firearm, destructive device, or other weapon, the use of which against a human being is likely to cause death or serious bodily injury.
    2. Simple assault is a class B misdemeanor except when the victim is a peace officer or correctional institution employee acting in an official capacity, and the actor knows that to be a fact, in which case the offense is a class C felony.
2. NDCC 12.1–08–02 defines preventing arrest and authorizes a defense when the officer "was not acting lawfully":
    1. A person is guilty of a class A misdemeanor if, with intent to prevent a public servant from effecting an arrest of himself or another for a misdemeanor or infraction, or from discharging any other official duty, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting the arrest or the discharge of the duty. A person is guilty of a class C felony if, with intent to prevent a public servant from effecting an arrest of himself or another for a class A, B, or C felony, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting such an arrest.
    2. It is a defense to a prosecution under this section that the public servant was not acting lawfully, but it is no defense that the defendant mistakenly believed that the public servant was not acting lawfully. A public servant executing a warrant or other process in good faith and under color of law shall be deemed to be acting lawfully.

al on the assault charge began,[3] the trial court orally dismissed the preventing arrest charge and, later that day, entered a written order of dismissal that was not served on the prosecution. The State appealed from the oral dismissal.

On appeal, the State submits that it can appeal the trial court's ruling, and that the trial court erred in dismissing the charge of preventing arrest.

## I. APPEALABILITY

Ritter does not oppose the State's claim of appealability. Nevertheless, we address appealability because our jurisdiction is implicated.

■ The State's right to appeal in criminal cases is governed by NDCC 29–28–07, which authorizes an appeal from an order quashing an information.[4] A majority of this court holds that the State may appeal from the "dismissal of an ... order ... that has the same effect as an order quashing an information." *State v. Hogie*, 424 N.W.2d 630, 631 (N.D.1988). *Compare State v. Flohr*, 259 N.W.2d 293 (N.D.1977). Review of this dismissal is within our jurisdiction.

■ The State appealed from an oral ruling. "An oral ruling on a motion is not an appealable order." *State v. Klocke*, 419 N.W.2d 918, 919 (N.D.1988). Soon after the oral ruling, the trial court entered a consistent, written order of dismissal. *State v. Hogie*, 424 N.W.2d at 631 ("[B]ecause a signed written order and a judgment consistent with the oral ruling were subsequently entered, we will treat the State's appeal as an appeal from the judgment. *See State v. Klocke*, [419 N.W.2d at 919]"). Since this dismissal is final, we are authorized to review it.

## II. UNLAWFUL DETENTION

The State argues that the officers had enough suspicion of criminal activity to stop Ritter to investigate the report of a fight, so that his temporary detention was constitutional, and that the duration of that temporary detention was reasonably related to the investigation. Ritter disputes both propositions.

The Fourth Amendment's protection against unreasonable seizures "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). *See also California v. Hodari D.*, — U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). These principles guide our analysis.

■ Because any criminal activity that the officers suspected did not occur in their presence, they could not arrest Ritter for misdemeanor assault without a warrant. *See* footnote 1. An officer is authorized to arrest for a misdemeanor not committed in his presence only with a warrant. *See* NDCC 29–06–15.[5] Although the fight re-

---

3. We are told that the jury acquitted Ritter of the charge of assault of the woman.

4. The pertinent part of NDCC 29–28–07 says: An appeal may be taken by the state from:
   1. An order quashing an information or indictment or any count thereof.

5. NDCC 29–06–15 says:
   1. A law enforcement officer, without a warrant, may arrest a person:
   a. For a public offense, committed or attempted in the officer's presence; and for the purpose of this subdivision a crime shall be deemed committed or attempted in the officer's presence when what the officer observes through the officer's senses reasonably indicates to the officer that a crime was in fact committed or attempted in the officer's presence by the person arrested.
   b. When the person arrested has committed a felony, although not in the officer's presence.
   c. When a felony in fact has been committed, and the officer has reasonble cause to believe the person arrested to have committed it.

port and the remarks overheard certainly supplied a reasonable suspicion for the officers to question Ritter, they did not supply probable cause to arrest or detain him. *See State v. Moe*, 151 N.W.2d 310 (N.D.1967) (Officers had probable cause to believe that offense of public intoxication was committed in their presence, making accused's arrest legal, and furnishing sufficient evidence for his jury conviction of resisting arrest). The trial court's ruling accepts that Ritter was an appropriate suspect, but the trial court held that the scope of the investigation was unreasonable. We agree that the officers had reason to stop Ritter for investigation, and that an officer's questioning, by itself, is not a Fourth Amendment violation.

The trial court found, however, that "the time was ... longer than necessary to effectuate the policeman's lawful purposes in this case." The trial court determined that Ritter "was detained by these officers for apparently some substantial period of time. The only purpose for which was to seek his identification which he refused to give and he refused to talk to them any further, which under the circumstances he had the right to do."

■ The State contests the latter ruling, arguing "that identifying oneself is essentially a neutral act that does not, by itself, implicate a person in criminal activity and that the protection of the Fifth Amendment cannot be invoked as a reason to refuse to answer." We do not agree that officers can detain someone for persistent investigative questioning until identification is compelled.

■ The State argues, in effect, that Ritter's obstinacy in refusing to identify himself, not the officers' arbitrariness, prolonged his detention. The State relies on *California v. Byers*, 402 U.S. 424, 91 S.Ct.

1535, 29 L.Ed.2d 9 (1971). The *Byers* plurality held that a California statute requiring automobile drivers to stop and identify themselves after an accident did not infringe the Fifth Amendment's guarantee against compelled self-incrimination, saying "[d]isclosure of name and address is an essentially neutral act." 91 S.Ct. at 1540. However, *Byers* is based on a regulatory scheme, not suspected criminal activity.

There is considerable difference between requiring a person to disclose information as the subject of a noncriminal regulation, and requiring a person to disclose information as a suspect in a criminal investigation. *See Baltimore City Dept. of Social Services v. Bouknight*, 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990), distinguishing between the civil regulatory powers and the criminal investigatory powers of the state. *Byers* does not help the State because there is no regulatory statute here. Moreover, in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), policemen physically detained the defendant to determine his identity after he refused to identify himself. The United States Supreme Court held that absent probable cause or reasonable suspicion of misconduct, the detention of the defendant to determine his identity was an unreasonable seizure, notwithstanding a state statute that made it a criminal act for a person to refuse to give his name and address to an officer "who has lawfully stopped him and requested the information." *Id.* at 2639. Under the Bill of Rights, officers cannot extend an investigative stop solely to coerce identification.

■ Officers may ask a person to cooperate and inquire about identity during an investigation, but officers have no right to convert an investigative stop into custodial interrogation to badger a suspect into an-

d. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested.

e. For the public offenses, not classified as felonies and not committed in the officer's presence as provided for under section 29–06–15.1.

f. On a charge, made upon reasonable cause, of driving or being in actual physical control of a vehicle while under the influence of alcoholic beverages.

g. For the offense of violating a protection order under section 14–07.1–06 or for an assault involving domestic violence pursuant to section 14–07.1–11.

NDCC 29–06–15.1 deals with the arrest of nonresident traffic violators.

swering. *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

The State relies on various statements in our cases which approve general questioning of citizens in the course of investigating a crime.... But these statements merely reiterated the settled principle that while the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer.

*Id.* at 1397 n. 6. A concurring opinion in the landmark decision of the United States Supreme Court on investigative stops also recognizes this "settled principle": "Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968) (White, Justice, concurring). In *City of Bismarck v. Schoppert,* 469 N.W.2d 808, 813 (N.D.1991), we recently confirmed that one stopped by police for investigation "was under no compulsion to identify himself." [6] *See also United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) ("Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop"). While these officers properly stopped Ritter to ascertain his identity, they had no authority to badger and coerce him into compliance.

The State argues that the "real issue is whether Ritter was legally detained until he became disorderly in the officers' presence." However, the trial court found that Ritter "was escorted from at least one site to another site near a squad car, was detained by three officers, and ... he was being detained after he asked to be either arrested or be free to leave." The trial court declared "that conduct ... is not

going to be allowed by the Court." Thus, the trial court concluded that Ritter was seized and in custody, "detained wrongfully," before his forceful reaction in shoving officer Olson.

■ Our standard of review on appeal, recognizing the importance of the trial court's opportunity to assess the credibility of witnesses, defers to the factual determinations by the trial court unless those determinations are contrary to the manifest weight of the evidence. *State v. Placek,* 386 N.W.2d 36 (N.D.1986). We often emphasize the difference between involuntary custodial interrogation and mere noncoercive investigation. *State v. Fasching,* 453 N.W.2d 761, 764 (N.D.1990). "Custodial interrogation can take place in the field as well as at the police station." *Id. See also State v. Connery,* 441 N.W.2d 651, 653–55 (N.D.1989), where we distinguish between statements made during "custodial interrogation" at gunpoint during an investigatory stop and another statement made by the accused after he had been told that he was free to leave. Investigative questioning has been distinguished from custodial interrogation in a number of other cases. *See State v. Pitman,* 427 N.W.2d 337 (N.D.1988); *State v. Mertz,* 362 N.W.2d 410 (N.D.1985); and *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). The United States Supreme Court cautions "that lower courts must be vigilant that police do not 'delay formally arresting detained [persons], and ... subject them to sustained and intimidating interrogation at the scene of their initial detention.'" *Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 207 n. 1, 102 L.Ed.2d 172 (1988) (quoting from *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). We agree with the trial court that the officer's physical control and sustained questioning of Ritter became custodial interrogation that wrongfully detained him.

---

**6.** *See also Florida v. Bostick,* — U.S. —, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ("[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual ...; ask to examine the individual's identification ...; and request consent to search his or her luggage ... as long as the police do not convey a message that compliance with their requests is required." *Id.* at —, 111 S.Ct. at — (citations omitted)).

Yet, we do not agree that Ritter was thereby automatically excused, as a matter of law, for his forceful conduct that followed.

## III. REMEDY

■ In effect, the trial court suppressed all evidence following Ritter's unconstitutional detention and, as a result, dismissed the charge of preventing arrest against him. Thus, the trial court judicially excused Ritter's forceful resistance. While we agree with the determination that Ritter's detention was unlawful, that determination does not complete our analysis. The question is whether, as a matter of law, official misconduct excuses forceful resistance? We believe that individual violence cannot replace the rule of law.

■ The long-standing remedy for official violations of the Bill of Rights, particularly the Fourth Amendment guarantee, has been the exclusionary rule. For over a century, the constitutional right to be free of unreasonable searches and seizures has been enforced by prohibiting use of evidence tainted by unlawful official conduct. *State v. Thordarson*, 440 N.W.2d 510, 512 (N.D.1989). But the same century of experience has produced the doctrine of "independent source" as an exception to the exclusionary rule. *Id.* Evidence of a crime, sufficiently distinguishable from and independent of the taint of official misconduct, is not suppressed. An independent crime is not shielded by the rule of exclusion.

This court has repeatedly rejected suppression of evidence as a remedy for official misconduct when the criminal charge arose from forceful resistance to official action. *State v. Indvik*, 382 N.W.2d 623 (N.D.1986).

> Indvik's independent and intervening actions of engaging the officer in a high-speed chase, running from the police officers into the woods, drawing a firearm on the police officers—and actually firing it—break the chain of causation and dissipate the taint of the prior illegality, *i.e.*, the invalid stop. [Citation omitted]. Indvik's independent and intervening actions

subsequent to the officers' attempt to stop Indvik certainly created probable cause for his arrest on the charge of terrorizing.

*Id.* at 627–28. In *Indvik*, for the same reason, we also refused to suppress evidence of a firearm found on Indvik after his arrest; Indvik's independent and intervening terrorizing conduct dispelled the taint of the illegal stop. We affirmed Indvik's jury convictions of reckless endangerment and terrorizing.

Similarly, in *State v. Saavedra*, 396 N.W.2d 304 (N.D.1986), we ruled that evidence of the disorderly conduct that brought about Saavedra's arrest need not be suppressed when his conduct followed a search of his van and his detention in the patrol car, both concededly illegal. We reasoned that the purpose of the exclusionary rule to deter official misconduct did not extend to evidence of an independent crime even though it was precipitated by an unlawful search and seizure by officers. *Id.* at 305. We affirmed Saavedra's jury conviction of disorderly conduct.

■ Likewise, in *State v. Kunkel*, 406 N.W.2d 681 (N.D.1987), we ruled that police officers' actions in entering Kunkel's room to remove him from the home that he lived in, without a warrant and thus arguably in violation of his constitutional rights, did not call for suppression of his attack on the officers. We explained:

> Regardless of Kunkel's belief that the police were wrongfully in his room, his attack was not the proper way to challenge their conduct. In our system law and order may sometimes interfere with an individual's rights. We do not intend to legitimize police misconduct, but only to emphasize that a procedure is available to rectify any injustice done by such misconduct.... In essence, the proper forum for the resolution of the propriety of the officers' action was in a courtroom by a judge, not via an attack....

*Id.* at 682 n. 3. We affirmed Kunkel's jury conviction of assault of a police officer. Generally, judicial approval of forceful reaction to official action, even when the

official action is unconstitutional, is not an appropriate remedy.

Our view in *Indvik, Saavedra,* and *Kunkel* represents some shift from prior law,[7] but corresponds to a principle incorporated in the North Dakota criminal code since 1973.[8] This enactment modified self-defense as a justification for improper official action.

> A person is not justified in using force for the purpose of resisting arrest, execution of process, or other performance of duty by a public servant under color of law, but excessive force may be resisted.

NDCC 12.1–05–03(1). Forceful resistance to an arrest "under color of law" is no longer legally justified unless "excessive force" is used by the officer.

This modification derives verbatim from the proposed Federal Criminal Code, which read, in part:

> *§ 603. Self-Defense.*
>
> A person is justified in using force upon another person in order to defend himself against danger of imminent unlawful bodily injury, sexual assault or detention by such other person, except that:

7. The prior law on resistance to unlawful official action was outlined in I *Working Papers of The National Commission on Reform of Federal Criminal Laws* (Study Draft; 1970):
   > The rules of justification were developed in a society which, of necessity, placed great emphasis on self-reliance. In a rural nation one could not quickly obtain the help of neighbors, or readily seek the help of law enforcement officials. Any impairment of access to one's home or land could cause substantial harm. Therefore, under the common law, developed then and still governing today, one may use force against another to defend himself, his family, and others in his household, to protect property and to prevent crime. This right to use force extends even to resistance to a public official attempting to make an arrest, if the arrest is unlawful.
   > *Id.* at 261.

8. Our Criminal Code, first enacted in 1973, is largely modeled on the proposed 1971 Federal Criminal Code. *Report of the North Dakota Legislative Council,* at 81 (1973). The proposed Federal Criminal Code has not been enacted by Congress and has only been enacted in North Dakota. *State v. Ennis,* 464 N.W.2d 378, 382 n. 4 (N.D.1990).

> (a) a person is not justified in using force for the purpose of resisting arrest, execution of process, or other performance of duty by a public servant under color of law, but excessive force may be resisted; . . . .

Study Draft, Federal Criminal Code (The National Commission on Reform of Federal Criminal Laws), p. 39 (1970). The Comment to § 603 explained:

> This section states the rule permitting the use of force to protect oneself from imminent harm. Present federal law on resisting unlawful arrest has been changed, by paragraph (a), to make legality of the arrest irrelevant. The purpose of this change is to discourage self-help for the resolution of such an issue.

*Id.* at 40.[9] The use of force to resist an unlawful arrest is thus curtailed.

Legislative history shows that the North Dakota legislature specifically recognized this change:

> Any person is justified in using force in self-defense against imminent unlawful bodily injury, sexual assault, or unlawful detention. However, if the force used is against a peace officer making an arrest

9. The proposed Federal Criminal Code changed the law authorizing resistance to an unlawful arrest. The *Working Papers* explained why:
   > 5. *Elimination of Right to Resist Arrest.*— Under present Federal law, there is a right "to use such force as (is) absolutely necessary to resist an attempted illegal arrest," even where the defendant knows that the person making the arrest is a law enforcement officer. This right to resist arrest has been severely criticized in recent years. We propose to do away with this privilege to use force to resist an arrest by a public servant. There are ample nonviolent remedies against improper official action. The law should not sanction any rule which would lawfully put an officer's safety at stake when he seeks to make an arrest.
   > Although the draft does not permit force for the purpose of resisting arrest, it does not curtail defensive force for the purpose of resisting illegal excessive force. This result follows from the language of section 603(a), negativing use of defensive force only for the purpose of resisting *arrest.*
   > I *Working Papers* at 264 (footnotes omitted). This discussion continues at some length, mulling related problems and solutions.

which later turns out to be unlawful, such use of force will be unjustified.

*Report of the North Dakota Legislative Council,* p. 83 (1973). Other states, too, are moving away from an unqualified right to resist an unlawful search or seizure by police. 1 LaFave, *Search and Seizure* § 1.13(a). This movement is attributed to the influence of the Model Penal Code published by the American Law Institute, which recommended that the "use of force is not justifiable * * * to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." Model Penal Code, Section 3.04(2)(a) (1962). The draftsmen of the Model Penal Code explained that it

> should be possible to provide adequate remedies against illegal arrest, without permitting the arrested person to resort to force—a course of action highly likely to result in greater injury even to himself than the detention.

Many states have now come to this position. 1 LaFave, *Search and Seizure,* § 1.13(a), p. 289, n. 8.[10] Forceful resistance to an unlawful search or seizure is no longer automatically excused, as a matter of

law, by exclusion of related evidence or by judicial dismissal.

■ Still, unlawful police action is not completely excused either. As *Saavedra* recognizes, the courts retain the power to act upon "evidence of flagrant police misconduct such as intentional harassment or the use of excessive force." 396 N.W.2d at 305. Particularly, if an accused avoids belligerent and forceful reactions to overbearing police conduct, the courts will remedy an unlawful arrest or detention by dismissal of charges. *See City of Bismarck v. Schoppert,* 469 N.W.2d 808 (N.D.1991).[11] In many cases, judicial remedies for unlawful police action remain appropriate.

■ More immediately, the criminal statutes still recognize justification defenses as factual remedies for official misconduct. Resistance to "excessive force" by an officer acting under color of law is a factual defense to any criminal charge arising from the resistance. NDCC 12.1–05–03(1). Specifically, where the charge is preventing arrest, as in this case, the defining statute authorizes "a defense to a prosecution under this section that the public servant was not acting lawfully...." NDCC 12.1–08–02(2).[12] Factual defenses

**10.** *See* Lerblance, *Resisting Unlawful Arrest: A Due Process Perspective,* 35 Cleve.St.L.Rev. 261, 269 (1987) ("At least twenty-one jurisdictions have followed the example of the Model Penal Code, providing by statute no justification for forceful resistance to an unlawful arrest by a known officer. At least six jurisdictions have, by judicial decision, abandoned the common law resistance right"). For a recent convert, *see State v. Miskimins,* 435 N.W.2d 217 (S.D.1989). *See also* 4 LaFave, *Search and Seizure,* § 11.4(j), p. 458 (1987).

**11.** Also, the officer may be liable in tort for false imprisonment. *See O'Fallon v. Pollard,* 427 N.W.2d 809 (N.D.1988); Prosser and Keaton, *The Law of Torts,* § 11 (1984). The officer may be liable for deprivation of constitutional rights under 42 U.S.C. § 1983. *See Patzner v. Burkett,* 779 F.2d 1363 (8th Cir.1985).

**12.** NDCC 12.1–08–02 also derives verbatim from the proposed Federal Criminal Code. Proposed § 1302 (part) read:
*Preventing Arrest or Discharge of Other Duties.*
(1) Offense. A person is guilty of a Class A misdemeanor if, with intent to prevent a public servant from effecting an arrest of himself or another or from discharging any other official duty, he creates a substantial risk of

bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting the arrest or the discharge of the duty.
(2) Defense. It is a defense to a prosecution under this section that the public servant was not acting lawfully; but it is no defense that the defendant mistakenly believed that the public servant was not acting lawfully. A public servant executing a warrant or other process in good faith and under color of law shall be deemed to be acting lawfully.
*Study Draft, Federal Criminal Code* (The National Commission on Reform of Federal Criminal Laws), p. 97 (1970).
Evidently, these vestiges of the right to resist unlawful official conduct remain to enable a jury to vindicate the individual's constitutional right to be free of unlawful searches and seizures. The Comment to this proposed section explained:
This section singles out and treats specially physical interference with a government function by resisting arrest. The conflicts in present federal law on the right to resist arrest are resolved under §§ 1301 and 1302 and under § 603(a), which deals with self-defense; these sections provide a consistent pattern of

remain as remedies for unlawful official conduct.

These defenses do not depend on judicial suppression of evidence or dismissal of charges. Rather, they depend upon full presentation of the facts to the trier of fact, usually the jury, for determination of the independent nature of the charged offense. Official misconduct is a justification defense to a charge of resisting arrest.

Accordingly, we hold that the trial court erred in excluding evidence and dismissing the charge of preventing arrest against Ritter as a matter of law. We reverse the dismissal of the charge and remand for trial, including submission to the jury of Ritter's defense that the officers were not acting lawfully in arresting him for resisting arrest.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, concurring specially.

I agree that the order of dismissal is appealable and that Ritter was unlawfully detained. I, therefore, concur in Parts I and II of the majority opinion. I also agree with that portion of Part III which reverses the order of dismissal. I write specially, however, to emphasize that only questions of fact are to be submitted to the jury, not questions of law.

Whether there was unconstitutional and thus unlawful police conduct is a question of law to be deduced by the trial court after it resolves any disputed facts. *See e.g. United States v. Carrillo,* 902 F.2d 1405, 1411 (9th Cir.1990); *United States v. Maragh,* 894 F.2d 415, 417–18 (D.C.Cir. 1990); *United States v. McKinnell,* 888 F.2d 669, 672 (10th Cir.1989). The jury does not resolve questions of law and, therefore, whether the officers were acting lawfully is not a jury question. *See Id.; Cf. City of Langdon v. Delvo,* 390 N.W.2d 51, 53 (N.D.1986) [probable cause is legal question to be determined by court]. We have already affirmed the trial court's conclusion of illegal detention and so the jury should be instructed that the police were acting unlawfully.

The trial court dismissed the preventing arrest charge as a sanction for police misconduct. I agree that that was improper because the trial judge misinterpreted the nature of the defense available to the charge. Ritter was charged with preventing arrest under Section 12.1-08-02, N.D.C.C. It is a defense to the crime of preventing arrest that the police officer was not acting lawfully. Section 12.1-08-02(2), N.D.C.C. Here, the police were not acting lawfully so Ritter was entitled to defend on that ground.[1]

However, the defense of unlawful police conduct, to a charge of preventing arrest, is not absolute. The comments to the proposed federal code suggest that the standards for judging the use of force in resist-

affording protection from risk of serious injury to an officer engaged in his duty in good faith and under color of law. Execution of official duties other than arrest is also covered, so that the public servant is protected against risk of bodily injury by reason of conduct which may not constitute "physical interference" under § 1301 or an assaultive offense under §§ 1611 *et seq.* The draft reflects the view that slight reflexive action such as a push or the closing of a door should not be an offense. The section proscribes conduct against a public servant executing a warrant or other process in "good faith, under color of law". Conduct in response to otherwise unlawful acts of a public servant is governed by the provisions generally applicable to use of force. The circumstances under which there is justification for use of force against a federal law enforcement officer in such cases are limited by § 603(a).

*Study Draft* at 97–98. I *Working Papers* discuss "Resistance to Unlawful Arrest or Process" at length, pondering possible resolutions of the constitutional tension between unlawful official action and forceful resistance. *See* I *Working Papers,* pp. 522–24.

1. The statutory defense distinguishes this case from *State v. Indvik,* 382 N.W.2d 623 (N.D.1986) [defendant charged with reckless endangerment and terrorizing]; *State v. Saavedra,* 396 N.W.2d 304 (N.D.1986) [defendant charged with disorderly conduct] and *State v. Kunkel,* 406 N.W.2d 681 (N.D.1987) [defendant charged with assault]. The defense of unlawful police conduct is not available to the crime of reckless endangerment or terrorizing or disorderly conduct or assault. *See,* N.D.C.C. Sections 12.1–17–03, 12.1–17–04, 12.1–31–01 and 12.1–17–08.

ing an unlawful arrest are those that govern the justifiable use of force in self-defense. I *Working Papers of the Nat'l Comm'n on Reform of Fed.Crim.Laws* at 522 (Study Draft 1970). On remand, the jury is to resolve fact questions relating to the reasonableness of Ritter's conduct under the circumstances of this case. It is up to the jury to decide whether Ritter's conduct was justifiable in light of the conduct of the police or whether it exceeded the boundaries of the statutory defense based upon the law of justification and self-defense.