**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kevin CONNERY, Defendant and Appellant.**

**Cr. No. 880274.**

Supreme Court of North Dakota.

June 6, 1989.

**652**

Bruce B. Haskell (argued), Asst. State's Atty., Bismarck, for plaintiff and appellee.

Feldner & Danielson, Mandan, for defendant and appellant; argued by Rodney K. Feldner.

ERICKSTAD, Chief Justice.

Kevin Connery appeals from a criminal judgment entered on a jury verdict finding him guilty of possession of a controlled substance in violation of § 19–03.1–23, N.D.C.C. We affirm.

At approximately 8 p.m. on November 1, 1987, Highway Patrol Officer Scott Brand stopped a vehicle driven by Connery on Highway 83 north of Bismarck because of a speeding violation. After obtaining Connery's driver's license, Brand returned to his patrol car, completed a traffic citation, and returned to Connery's vehicle with a flashlight to have him sign the citation. Brand noticed an open beer can in the front seat and asked Connery and his passenger to step out and stand in front of the vehicle. Brand reached into the driver's side of the vehicle, picked up the can, which was empty, and noticed a paper bag near the passenger's side.

When Brand began walking around the vehicle to the passenger's side to retrieve the paper bag, Connery ran from the front of the vehicle to the passenger door and grabbed something from under the seat. Brand told Connery to leave the object alone and step back, but Connery then ran to the rear of the vehicle. Brand observed that Connery, with his back toward him, was crouched over and reaching toward the center of his stomach and back to his pockets. Brand also noticed something that appeared to be wooden stuck in between Connery's legs and thought that it could be a rifle or shotgun stock.

At this point, Brand drew his service revolver and told Connery to place the object on the ground and step away from it. Instead, Connery walked to the front of the vehicle and, according to Brand, "spun around," thrust the object up in the air, and then placed it on the hood of the car. The object was a wooden box. When Brand asked Connery what was in the box, he responded, "just some marijuana." Brand looked into the box and found a small amount of what appeared to be marijuana. Brand then placed Connery in the back seat "cage" of the patrol car.

With Connery secured in the patrol car, Brand returned to the front of Connery's vehicle and, because it was an extremely windy evening, began looking on the ground for evidence that might have been blown from the box when Connery thrust it in the air. Brand found what appeared to be marijuana on the ground as well as a baggie containing marijuana directly in front of the car. Brand also saw an orange container rolling on the highway, retrieved it, and discovered another baggie containing marijuana inside. Brand returned to the patrol car and, after advising Connery that the material he had found would be analyzed, that the information would be submitted to the state's attorney, and that charges might be filed, told Connery that he could leave.

Brand unlocked the back door of the patrol car for Connery. As Brand stepped back to let Connery out, he noticed two

more baggies of what appeared to be marijuana lying on the ground beside the patrol car. Brand asked Connery where those baggies had come from and Connery responded that he "threw it out." Connery then left in his vehicle.

On December 16, 1987, Connery was charged with possession of marijuana in an amount weighing more than one-half ounce but less than one ounce, a class A misdemeanor. Connery moved to suppress the two statements he made to Brand implicating his ownership of the marijuana on the ground that he had not been advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). With regard to Connery's response when asked what was in the wooden box, the trial court concluded that "[b]ecause the patrolman had drawn his service revolver and was attempting to control the defendant with the threat imposed by that weapon," Connery was in "custody" at that point and the lack of *Miranda* warnings mandated suppression of this statement. However, the trial court refused to suppress Connery's response when asked about the baggies found on the ground near the patrol car. The trial court reasoned that because Connery had been told he would be allowed to leave and was in fact leaving as the statement was made, Connery "was not in custody at the time that statement was made and could not

reasonably have believed he was." Connery's response to Brand's question as he exited the patrol car was admitted in evidence at trial. The jury returned a verdict of guilty.

Connery asserts on appeal that the trial court erred in refusing to suppress the statement he made as he was leaving the patrol car; that the evidence is insufficient to sustain the verdict; and that his right to a speedy trial was violated.

## MIRANDA

■ We begin by noting the arguments the parties did not present either to the trial court on the suppression motion or to this court on appeal. The State did not assert that Connery's initial response when Brand, with gun drawn, asked him what was in the box, should have been admissible as falling within the public safety exception to the *Miranda* requirement. *See New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).[1] Likewise, Connery did not assert that, regardless of whether he was "in custody" when he made the statement as he was leaving the patrol car, the statement was "tainted" by his earlier unwarned statement to Brand, and therefore inadmissible under the "fruit-of-the-poisonous-tree" doctrine. *See Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).[2] Accord-

**1.** In *New York v. Quarles,* 467 U.S. 649, 656, 104 S.Ct. 2626, 2632, 81 L.Ed.2d 550 (1984), the United States Supreme Court held that *Miranda* need not "be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety." The Court reasoned that "police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Quarles, supra,* 467 U.S. at 658–659, 104 S.Ct. at 2632–2633. In the former situation, a defendant's response is admissible even though the defendant was technically "in custody" when the response was made. *See U.S. v. Brady,* 819 F.2d 884 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988).

**2.** In *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the United States Supreme Court held that an unwarned confession taken during a custodial interrogation does

not, without more, "taint" subsequent admissions made after the suspect has been fully advised of and has waived his *Miranda* rights so as to render the subsequent statements inadmissible under the "fruit-of-the-poisonous-tree" doctrine. The Court reasoned that because a violation of *Miranda* is not a violation of the fifth amendment itself, the "fruit-of-the-poisonous-tree" doctrine is not applicable to bar admissibility of the subsequent warned confession unless it is shown that the prior unwarned statement was coerced and involuntary as measured by traditional fifth amendment due process standards. *Elstad, supra,* 470 U.S. at 307–308, 105 S.Ct. at 1296.

Notwithstanding the *Elstad* Court's partial reliance on the interceding *Miranda* warning in that case, several courts have read *Elstad* to strongly suggest that a *Miranda* violation without actual coercion will not taint evidence derived from a confession no matter what form such evidence takes. *See United States v. Cherry,* 794 F.2d 201, 207–208 (5th Cir.1986), *cert.*

ingly, we limit our discussion to the arguments presented by the parties, *i.e.*, whether Connery was "in custody" at the time he told Brand that he had thrown out the baggies of marijuana found near the patrol car.

■ *Miranda* warnings are required only when a person is subject to "custodial interrogation." *State v. Newnam*, 409 N.W.2d 79, 82 (N.D.1987). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, *supra*, 384 U.S. at 444, 86 S.Ct. at 1612. It has also been said that the safeguards prescribed by *Miranda* become applicable when "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 335 (1984) [quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)]. To determine whether a suspect is "in custody" for *Miranda* purposes we look at how a reasonable person in the suspect's position would have understood the situation. *State v. Pitman*, 427 N.W.2d 337, 341 (N.D.1988) [citing *Berkemer*, *supra*]. On appeal, we recognize the importance of the trial court's opportunity to assess the credibility of witnesses by according great deference to its decision in suppression matters. *State v. Thordarson*, 440 N.W.2d 510, 512 (N.D.1989); *State v. Placek*, 386 N.W.2d 36, 37 (N.D.1986).

■ While roadside questioning of a motorist incident to a routine traffic stop does not constitute custodial interrogation [*Pennsylvania v. Bruder*, — U.S. —, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988); *Berkemer, supra*], the initial stop in this case became more than a routine traffic stop when Brand drew his service revolver, ordered Connery to place the object on the ground, and followed as Connery maneuvered his way around the vehicle. In drawing his weapon, Brand asserted his authority over Connery and gave a clear indication that the confrontation had escalated beyond a general investigation.[3] *See Miley v. United States*, 477 A.2d 720, 722–723 (D.C. Ct.App.1984), and cases cited therein. When viewed objectively, Connery's freedom of movement at that point may have been sufficiently curtailed that he could reasonably believe he was not free to leave. We cannot, however, say the same about the circumstances present when Connery admitted he had thrown out the baggies of marijuana.

■ Brand placed Connery in the back seat of the patrol car while he completed his search of the area. Brand returned to the patrol car and told Connery that the material he found would be analyzed, that the information would be forwarded to the state's attorney, and that he might be formally charged. Brand also told Connery that he would not be "taken in," but would be allowed to leave, and Connery was in the process of leaving the patrol car to return to his own vehicle when he made the incriminating statement. At no time dur-

---

*denied*, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987) [physical evidence admissible]; *In re Owen F.*, 70 Md.App. 678, 523 A.2d 627, 631–632 (1987) [physical evidence admissible]; *State v. Wethered*, 110 Wash.2d 466, 755 P.2d 797, 801–802 (1988) [physical evidence admissible]. At least one court, relying on *Elstad*, has said in dictum that incriminating statements made by a defendant while not in custody would not be "tainted" by an earlier confession given without *Miranda* warnings during a custodial interrogation. *See U.S. v. Phillips*, 812 F.2d 1355, 1362 n. 7 (11th Cir.1987). *But compare State v. Sargent*, 111 Wash.2d 641, 762 P.2d 1127, 1133 n. 2 (1988) [confession obtained without *Miranda* warnings while defendant in custody "tainted" subsequent volunteered statement; *Elstad* inapplicable].

Although Connery has not raised the possible application of the "fruit-of-the-poisonous-tree" doctrine in this case, we could address this issue if it constitutes obvious error affecting substantial rights of the defendant under Rule 52(b), N.D.R.Crim.P. While it is a close question whether, under *Elstad*, Connery's second statement would be considered "tainted" by his unwarned prior statement thus rendering it inadmissible, we do not believe that this issue rises to the level of obvious error. *See State v. Prigge*, 437 N.W.2d 520, 521 (N.D.1989).

**3.** We do not suggest that Brand was unjustified in drawing his weapon under these circumstances.

ing this scenario was Connery placed under formal arrest. Although Brand may have had probable cause to place Connery under arrest, law enforcement officers are under no constitutional duty to halt the questioning of a suspect and place that person under arrest the moment they have the minimum evidence necessary to establish probable cause. *See United States v. Hudgens,* 798 F.2d 1234, 1238 (9th Cir.1986); *see also Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966). The relevant inquiry is whether a reasonable person in Connery's position would have believed that he was free to leave. Having been told he could leave, and, in fact, having subsequently left the scene in his own vehicle, we conclude that Connery was not in custody or otherwise deprived of his freedom of action in any significant way at the time he made the challenged statement. *Cf. Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) [emphasizing that defendant did in fact leave police station without hindrance in finding no custodial interrogation]. Accordingly, we conclude that the trial court did not err in refusing to suppress Connery's second statement.

## SUFFICIENCY OF EVIDENCE

■ In challenging the sufficiency of the evidence on appeal, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *State v. Jacobson,* 419 N.W.2d 899, 901 (N.D.1988). To convict an accused under § 19–03.1–23, N.D.C.C., the State must prove that the accused had possession of marijuana. *State v. Morris,* 331 N.W.2d 48, 53 (N.D. 1983). Possession may be actual or constructive, exclusive or joint, and may be shown entirely by circumstantial evidence. *State v. Morris, supra.* Constructive possession may be established by showing that the accused had the power and capability to exercise dominion and control over the contraband. *State v. Morris, supra.*

Connery asserts that there was no evidence to show that he possessed the orange container containing marijuana which Brand found rolling along the highway north of his vehicle. Brand testified that it was possible the container could have been thrown from a passing vehicle, but that it was "highly improbable." We believe that there was sufficient circumstantial evidence for the jury to find that Connery possessed the marijuana in the container. It was a windy evening and the container was found in the general vicinity of other similar contraband. We conclude that the evidence was sufficient to sustain the verdict.

## SPEEDY TRIAL

■ Resolving a claim of violation of the constitutional right to a speedy trial requires evaluation of four factors: length of delay, reason for delay, defendant's assertion of the right, and prejudice to the defendant. *State v. Littlewind,* 417 N.W.2d 361, 364 (N.D.1987); *State v. Padgett,* 410 N.W.2d 143, 145 (N.D.1987). The evaluation process requires balancing and weighing, and no single factor is controlling. *State v. Runck,* 418 N.W.2d 262, 265 (N.D. 1987).

■ The criminal complaint against Connery was filed on December 18, 1987. He was served with the arrest warrant on February 3, 1988. Connery filed a motion asserting his speedy trial right on March 22, 1988. Trial was held on June 23, 1988. The reason for the six-month delay between the issuance of the complaint and the trial was due mainly to Brand's absence from the state while on military leave with the National Guard. After Connery filed his demand for speedy trial, the State moved, under Rule 15(a)(3), N.D.R.Crim.P., for an order allowing the deposition of Brand for the purpose of perpetuating testimony. In the alternative, the State sought a continuance of the scheduled trial date from June 2 to a date after June 10, 1988, when Brand would be available. Connery opposed both motions. In the interim, a telephone deposition was taken of Brand for purposes of the suppression motion. Connery claims he was prejudiced because during the trial, Brand could not recall "what specific steps he took to stop

the Defendant's vehicle, where his vehicle was located in relation to the defendant's vehicle, or whether or not he had searched the Defendant before placing him in the patrol vehicle cage."

Balancing the relevant factors, we conclude that these circumstances are insufficient to establish a violation of Connery's right to a speedy trial. The six-month delay in this case is not unduly excessive. The delay was occasioned by the absence of an essential witness. A missing witness can serve as a valid reason to justify an appropriate delay of trial [see *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)], and we believe the State made reasonable efforts to move the proceedings along. There is no hint in the record that the delay was the "result of any attempt by the State to delay trial for the purpose of hindering defendant's defense." *State v. Wunderlich*, 338 N.W.2d 658, 661 (N.D.1983).

Moreover, we are not impressed by Connery's claim of prejudice. Connery has not explained to us how Brand's inability to recall the peripheral circumstances of the traffic stop affected any material issue that was present in his trial for possession of a controlled substance. *See State v. Erickson*, 241 N.W.2d 854, 860 (N.D.1976). While these circumstances may have been relevant to the suppression motion, we are not persuaded that they were sufficiently relevant to the trial on the merits to establish that Connery suffered prejudice as a result of Brand's inability to recall them. We therefore conclude that Connery's right to a speedy trial was not violated.

Accordingly, the judgment of conviction is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.