STATE of North Dakota, Plaintiff and Appellant,

v.

Donald W. MURRAY, Defendant and Appellee.

Cr. No. 930082.

Supreme Court of North Dakota.

Jan. 5, 1994.

Jonathan R. Byers (argued), Asst. Atty. Gen., Bismarck, for plaintiff and appellant.

Lawrence D. DuBois (argued), Fleming, Dubois & Trenbeath, for defendant and appellee.

NEUMANN, Justice.

The State of North Dakota appeals from an order entered by the Pembina County District Court suppressing the defendant's confession. On appeal, the State argues that the investigating officer's failure to advise the defendant of the existence of a warrant for his arrest does not affect the admissibility of his confession. We find that the investigation met Federal and State constitutional requirements, and we therefore reverse. As an alternative legal theory to uphold the suppression, appellee argues the confession violates NDCC § 29–21–12.1. On this point we remand for further proceedings.

The essential facts are not in dispute. In 1990, Pembina County Social Services conducted an investigation in response to a report of suspected child abuse by Donald W. Murray (Murray). Multiple interviews of Murray were conducted in the course of this investigation. In 1992, the North Dakota Child Sexual Abuse Team became involved, and conducted a follow-up investigation. On August 12, 1992, in connection with this investigation, Pembina County judge, Thomas K. Metelmann, issued to agent Daniel G. Hocking (Hocking) of the North Dakota Bureau of Criminal Investigation, a warrant for the arrest of Murray for the offense of Gross Sexual Imposition in violation of NDCC § 12.1–20–03. On the morning of August 13, 1992, Hocking contacted Murray by telephone and asked if he would be willing to come to the Sheriff's Office in order to speak with him. Murray came to the office, and was advised of his *Miranda* rights.[1] He was also told that he was not under arrest, and could leave at any time. Murray then participated in an interview in which he confessed to having sexual intercourse with a victim under the age of 15. After the interview was completed, Hocking arrested Murray, serving him with the complaint and warrant. Thereafter, Murray was bound over to the Pembina County District Court to answer to the charge of Gross Sexual Imposition.

Prior to trial, the district court granted Murray's motion to suppress the testimony of Hocking. A verbal announcement of this order was made in open court on February 16, 1993, the date of the hearing. At that time the district court judge stated:

"To withhold information of an arrest warrant and complaint that is in his possession before engaging in conversation to incriminate him is a grossly unfair action. It offends my sense of due process and it takes the voluntariness out of the statement; therefore, that will be suppressed."

The written suppression order, dated March 16, 1993, and filed March 18, 1993, states:

"The basis for this suppression is that Agent Daniel G. Hocking at the time he interviewed Donald W. Murray had in his possession a Complaint, Affidavit in Support of Complaint and Arrest Warrant charging Donald W. Murray with the matters set forth in this case. Daniel W. [sic] Hocking did not inform Mr. Murray prior to taking his statement that he had those

---

1. "Prior to any questioning [in a custodial setting], the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–707 (1966).

documents in his possession. This Court believes that failure to disclose that information to Mr. Murray violates due process and further taints the voluntariness of Mr. Murray's confession."

The State's Notice of Appeal was filed with the district court on March 9, 1993. On the date of filing this notice, the State, realizing that the written suppression order would not be signed by the judge until some time in mid-March, requested that the notice be treated as filed as of the date of the entry of the written order. A statement of the prosecutor was dated and mailed the 15th of March, and filed on March 18, 1993. The contents of the Statement of Prosecutor includes a statement that "[t]he evidence that is being suppressed is substantial proof of the elements of Gross Sexual Imposition as charged in the Criminal Information," as well as a provision stating that it was understood the statement would be deemed filed with the Notice of Appeal as of the date of entry of the written suppression order.

### I.

Murray contends that due to lack of compliance by the State with NDCC § 29–28–07, the appeal should be dismissed. We do not agree. Section 29–28–07(5) of the North Dakota Century Code states:

"An appeal may be taken by the state from:

5. An order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement of the prosecuting attorney asserting that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding. The statement must be filed with the clerk of district court and a copy must accompany the notice of appeal."

Murray puts forth several arguments to support his contention that the State failed to meet the statutory appeal requirements.

■ First, Murray argues that since a copy of the prosecutor's statement did not accompany the notice of appeal into the courthouse, the State failed to meet the stat-

utory requirement that the two must accompany each other upon filing with the clerk of district court. NDCC § 29–28–07(5). When filing the notice of appeal with the district court, the State realized that as of that date, an appealable order was not yet in existence. *See State v. Hogie,* 424 N.W.2d 630, 631 (N.D.1988) ("An oral ruling on a motion is not an appealable order."). Because of this, the notice of appeal contains an acknowledgement that it would not be deemed as filed until a written order was entered. As of the date of filing of the written order, the notice of appeal was accompanied by the prosecutor's statement. Since all the documents required by NDCC § 29–28–07(5) for appeal were waiting for the written order when it was entered, we find that the State has met these statutory requirements to appeal.

■ Murray also argues that the State failed to show that the suppressed evidence is "a substantial proof of a fact material in the proceeding," as required by NDCC § 29–28–07(5). We find that the State met its burden of showing that the suppressed evidence was substantial proof of fact which was material to the proceedings. The prosecutor's statement included a recitation of the statutory requirements regarding undue delay and substantial proof. As we have held before, the prosecuting attorney's explanation of why the suppressed evidence is substantial proof material to the proceedings may be included in the prosecutor's statement or in the State's brief filed for the appeal. *E.g., State v. Dilger,* 322 N.W.2d 461, 463 (N.D.1982). Here, the State's appellate brief succinctly discusses the importance of a defendant's confession in a criminal prosecution. We find it hard to imagine suppressed testimony which would more clearly meet the statutory requirements of NDCC § 29–28–07(5). Accordingly, we find the State has met the requirements to appeal the court's order suppressing testimony of Murray's confession.

### II.

■ The State argues that Murray did not have a constitutional right to be advised of the presence of the arrest warrant before he was interviewed by the authorities. Un-

der the circumstances of this case, we agree. Voluntariness of confessions depends on questions of fact. *E.g., State v. Taillon*, 470 N.W.2d 226, 228 (N.D.1991). Since trial courts are in superior positions to judge credibility and weight, we show great deference to their determinations regarding voluntariness of confessions. *E.g., id.* We will reverse the trial court's decision only if it is contrary to the manifest weight of the evidence. *E.g., id.* "The trial court's disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's determination." *State v. Discoe*, 334 N.W.2d 466, 468 (N.D. 1983) (citations omitted). The case before us is unusual in that the material facts are not in dispute. Upon examining the record to determine whether there is sufficient evidence to support the trial court's finding of involuntariness, we find that the trial court's decision is contrary to the manifest weight of the evidence, and we therefore reverse.

■ Voluntariness challenges are of two types. They are either based on due process grounds, or on self-incrimination grounds. When the voluntariness of a confession is attacked on due process grounds, the outcome is determined by considering the totality of the circumstances. *E.g., State v. Newnam*, 409 N.W.2d 79, 83 (N.D.1987). This is also the standard applied when determining whether a defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights provided for under the Fifth Amendment. *State v. Taillon*, 470 N.W.2d at 228; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The issue of whether Hocking's interview with Murray constituted a custodial interrogation was discussed at the suppression hearing, in the parties' briefs,[2] and at oral argument. The issue, however, is not a live one. The record not only indicates that this clearly was not a custodial situation, but it also discloses that Hocking gratuitously advised Murray of his *Miranda* rights. *See Newnam*, 409 N.W.2d at 82–83 (*Miranda* warnings not required unless defendant taken into custody, or otherwise deprived of his freedom of action).

■ The existence of the arrest warrant does not convert this noncustodial situation into a custodial situation. The Supreme Court has held: "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984) (footnote omitted). *State v. Connery*, 441 N.W.2d 651, 655 (N.D.1989). Murray was unaware of the existence of the arrest warrant, and therefore its existence could not have affected his understanding of his position. *See United States v. Reynolds*, 762 F.2d 489, 493 (6th Cir.1985) (undercover officers possessed arrest warrants at time of questioning). Since a reasonable person in Murray's position would have felt free to leave at any time, the questioning was not custodial, and *Miranda* did not apply.[3]

■ The fact that *Miranda* warnings were gratuitously given is not wholly irrelevant. *State v. Taillon*, 470 N.W.2d at 229. We distinguish this case from *Taillon*, where an accused relied on and attempted to exercise *Miranda* rights gratuitously given. *Id.* at 227. Murray did not attempt to exercise any of the rights described in the *Miranda* warning. Additionally, the fact that *Miranda* was complied with does not automatically make the confession voluntary. *E.g., State v. Rovang*, 325 N.W.2d 276 (N.D.1982).

Accordingly, we find that the trial court's reference to "voluntariness" in the suppression order must refer to due process.

2. Murray's appellate brief quotes Article I, Section 12, of the North Dakota Constitution. As we have said before, "[t]he pertinent language of Article I, Section 12, is identical to that of the Fifth Amendment." *State v. Nordquist*, 309 N.W.2d 109, 119 n. 9 (N.D.1981).

3. Due to this finding that the questioning was not custodial, we need not make a determination whether the questioning was also an "interrogation" under *Miranda*.

The State argues that the failure to advise Murray of the warrant has nothing to do with the voluntariness of the confession under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment states that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. The United States Supreme Court has stated "that by virtue of the Due Process Clause 'certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned.'" *Colorado v. Connelly,* 479 U.S. 157, 163, 107 S.Ct. 515, 519, 93 L.Ed.2d 473, 481 (1986), citing to *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). In that same opinion, the Court went on to briefly discuss the development of due process as it relates to criminal confessions. *Id.* Referring to the case of *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936), as the Supreme Court's "seminal confession case," the Court went on to explain how even though the Fifth Amendment did not apply to the states at that time, due process protection afforded protection from state actions which were "revolting to the sense of justice." *Connelly,* 479 U.S. at 163, 107 S.Ct. at 519. "[T]hus the cases considered by this Court over the 50 years since *Brown v. Mississippi* have focused upon the crucial element of police overreaching. While each confession case has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct." *Id.* at 163–64, 107 S.Ct. at 520 (footnote omitted).

The question then is whether Hocking's act of not informing Murray of the existence of the arrest warrant rises to the level of coercion which constitutes a finding of involuntariness. Coercion, in and of itself, does not invalidate a confession. *Connelly,* 479 U.S. at 157, 107 S.Ct. at 516; *State v. Jenner,* 451 N.W.2d 710 (S.D.1990), *denial of habeas corpus aff'd.* Confessions are not voluntary when a defendant's will is overborne at the time the confession is given. *E.g., Taillon,* 470 N.W.2d at 228. *Schneck-*

*loth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), *reh'g denied.* Reviewing the record, we find the trial court's determination that Murray's confession was involuntary is manifestly against the weight of the evidence.

In *State v. VanNatta,* 506 N.W.2d 63, 69 (N.D.1993), we reiterated the law of voluntariness.

"'A confession is voluntary if it is the product of the defendant's free choice rather than the product of coercion.... Voluntariness is determined by examining the totality of the circumstances surrounding the confession.... The inquiry focuses on two elements: (1) the characteristics and condition of the accused at the time of the confession and (2) the details of the setting in which the confession was obtained.... No one factor is determinative....'"

Applying that law to the case at hand, although verbalizing the totality of the circumstances standard, the trial court, to the exclusion of all else, appears to have based its decision solely on the fact that Hocking did not inform Murray of the existence of the arrest warrant. The trial court's rationale for finding that the confession was involuntary under the totality of the circumstances was that the withholding of the information regarding the existence of the arrest warrant and complaint affected Murray's decision of whether or not to make the statements he ultimately made to Hocking. Murray and the trial court would have us adopt a "but for" analysis when weighing and balancing the totality of the circumstances. We find this to be a novel proposition which is without legal precedent.

This exclusive reliance by the trial court especially concerns us in light of the reasoning of the Supreme Court in *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). In *Moran,* the Court stated:

"Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a

constitutional right.... No doubt the additional information would have been useful to respondent; perhaps even it might have affected his decision to confess. But we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." 475 U.S. at 422, 106 S.Ct. at 1141 (during custodial interrogation, investigator failed to inform defendant of attempts of non-requested attorney to contact defendant). We have never held that interviewers are required to "show their entire hand" during questioning such that the interviewee can make an "informed" decision of whether to speak to the interviewer.

The contents of the record do not suggest Murray is afflicted with any mental or physical conditions which might be relevant in a consideration of voluntariness under the totality of the circumstances. Additionally, other than the withholding of information regarding the arrest warrant, Murray has failed to show evidence of physical or psychological coercion such that Murray's will was overborne. There is no indication that Murray suffered due to the duration or nature of the interview, or that he was deprived of such comforts as food or sleep. The record is void of any of the traditional indicia of coercion.

We find that the withholding of knowledge of an arrest warrant is not the type of behavior which, standing alone, constitutes coercion. This is especially true in light of the gratuitous giving of *Miranda* warnings, which included the statement that "anything you say can and will be used against you in the court of law." As noted above, it is precisely the added element of custody which gives rise to Fifth Amendment protections. In this respect, the fact that Murray was not aware of the complaint and arrest warrant at the time of questioning has the effect of lessening the concerns of inherent coercion which accompany custodial interrogations.

Murray was informed of the possible legal consequences of his statements. Ignoring for a moment the existence of the already issued arrest warrant, the fact remained that Murray could have been arrested at any time. *See Connery*, 441 N.W.2d at 655 ("law enforcement officers are under no constitutional duty to halt the questioning of a suspect and place that person under arrest the moment they have minimum evidence necessary to establish probable cause"). At no time did Hocking attempt to negotiate a deal or promise with Murray such that his confession would result in no arrest. And at no time did Murray attempt to leave or stop answering questions.

### III.

In his reply brief, Murray argues that Hocking's testimony regarding his confession should be suppressed due to allegedly fraudulent statements made by Hocking at the time of the interview.[4] This argument is based on a North Dakota statute which allows for suppression of statements based upon police conduct. NDCC § 29-21-12.1, provides that:

> "*Statements, admissions, or confessions procured by duress, fraud, threat, or promises inadmissible in any criminal action.* Any statement, admission, or confession procured from any person charged with crime in a state court, which was obtained by duress, fraud, threat, or promises, is not admissible in evidence against said person in any criminal action."

Appellee raises this argument for the first time on appeal. The trial court did not consider the statute when deciding the motion to suppress. Normally an appellee arguing for affirmance may assert reasons that were not raised below. *See, e.g., First Nat. Bank of Belfield v. Burich*, 367 N.W.2d 148, 154 (N.D.1985) ("A correct outcome will not be set aside merely because the trial court assigned an incorrect reason for its deci-

---

**4.** At the beginning of the interview Hocking told Murray that "right now, he was not under arrest," and "the door is unlocked, if you want to leave, that's fine at this time." Although the State provided the trial court with uncontested evidence to the effect that the door was unlocked, and up to that point Murray could have left, an actual finding was never made by the trial court whether these statements were fraudulent.

sion...."). [5] Here, however, we lack the findings of fact necessary to determine whether the statute may apply. *See Hospital Services, Inc. v. Brackey,* 283 N.W.2d 174 (N.D.1979). We are therefore unable to consider Murray's argument on the record.

For the above-stated reasons, we reverse the trial court's order suppressing Murray's confession on the grounds which were considered, and remand for further proceedings consistent with this opinion.

VANDE WALLE, C.J., and MESCHKE and SANDSTROM, JJ., concur.

LEVINE, Justice, concurring in the result.

*Miranda* gave us a brightline test to apply to confessions given by suspects in custody. Police must give those familiar warnings and the suspect must waive his or her rights before the police may subject the suspect to interrogation. Breach of that protocol results in an inadmissible confession. When police question a suspect not in custody, or a custodial suspect properly Mirandized who has waived his or her rights, and that suspect "confesses," we test the validity, *i.e.,* voluntariness, of that confession under the traditional, pre-*Miranda,* due process test, namely, whether the police conduct "so shocks the sensibilities of civilized society" as to constitute a violation of due process under the federal constitution. *Moran v. Burbine,* 475 U.S. 412, 433–34, 106 S.Ct. 1135, 1147, 89 L.Ed.2d 410 (1986).

The question presented in this case is how much deception and trickery may be used in police interrogation before it is deemed to be coercive enough to overbear the free will of the suspect while shocking our sensibilities. The answer given by the federal cases indicate that the police may go a long, long way, far beyond the mere ploy of withholding information of an arrest warrant.

In *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the defendant argued that he should have been told before he confessed that a prior inadmissible incriminating statement could not be used

against him. The response from the Supreme Court made short shrift of that argument: "This Court has never embraced the theory that a defendant's ignorance of the 'full consequences of his decision vitiates their voluntariness." *Id.* at 316–17, 105 S.Ct. at 1297. Sensibilities were not shocked in *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), when a defendant confessed after having been told falsely that his codefendant had turned state's evidence. So too, a guilty plea was voluntary even though the defendant was not told that a prior coerced confession could not be used against him. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). There was no trickery in *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977), when the defendant testified before the grand jury, having been warned by the prosecutor that he had the right to remain silent but not informed that he could be indicted as a result of his grand jury testimony. And, in *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the defendant's complaints about ineffective assistance of counsel who misinformed him about his eligibility for parole, provoked the following response: "We have never held that United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary ..." *Id.* at 56, 106 S.Ct. at 369. Even an officer's false suggestion that the defendant's victim was still alive and could identify her attacker does not violate due process. *Miller v. Fenton,* 796 F.2d 598 (3rd Cir.), *cert. denied, Miller v. Neubert,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986).

It seems rather clear to me that, under federal law, the failure to disclose the arrest warrant to Murray is not the kind of conscience-shocker that deprives Murray of his right to due process under the Fourteenth Amendment of the United States Constitution. Measuring Murray's confession against the requirements of federal due process, I agree that it was voluntary and admissible

---

**5.** But note the contrary situation of an appellant raising an argument for the first time on appeal. *See, In re A.G.,* 506 N.W.2d 402 (N.D.1993)

("One of the guidelines for raising an issue on appeal is that the issue was adequately raised in the lower court.").

under federal law. I concur, therefore, that withholding information of the arrest warrant did not constitute sufficient trickery to overcome defendant's free will. *See Miller v. Fenton, supra. See generally* 29 Am.Jur.2d, *Evidence* §§ 571, 572.

I do not agree that the state due process question is properly before us or that the federal cases require us to hold as a matter of state constitutional law that there is no due process violation. That question should await another day when it has been properly briefed and analyzed in the context of our state's constitution, history, public policy and case law.

I concur in the result.